In re Abella, Respondent.

Petition by the Attorney General for Disbarment of the Defendant from the Practice of the Professions of Attorney and Notary.

No. 12.—Decided July 27, 1917.

Attorneys—Disbarment—Moral Depravity.—When a misdemeanor is committed by an attorney in the exercise of his profession and he is convicted thereof, he may be suspended or disbarred by the Supreme Court from the practice of his profession whether the offense implies moral depravity or not.

Id.—Id.—Notaries Public.—An attorney cannot be disbarred from practicing as a notary by virtue of a proceeding brought under the Act of March 11, 1909, to disbar him from the practice of law, if he is practicing as a notary under a separate license obtained as the result of an examination held in accordance with the provisions of the Act of February 10, 1902, and not under his license to practice law.

The facts are stated in the opinion.

*Mr. Salvador Mestre, Fiscal* of the Supreme Court, for the petitioner.

*Messrs. Jacinto Texidor* and *E. Acuña Aybar* for the respondent.

Mr. Justice del Toro delivered the opinion of the court.

Acting under the authority of the Attorney General of Porto Rico, the *fiscal* of this court petitioned for the disbarment of Luis Abella Blanco · as an attorney-at-law and the revocation of his license as a notary public, on the following facts:

"1. Luis Abella Blanco is an attorney-at-law, admitted to practice before the Supreme Court of Porto Rico on December 14, 1906, and authorized to practice before the insular courts on December 17 of the same year. 2. The said Luis Abella Blanco is also a notary public, having been licensed as such by virtue of passing an examination and making oath before the Supreme Court of Porto Rico on December 2, 1902, and having registered as such notary in the office of the Secretary of Porto Rico on December 20, 1905. 3. On or about April 17, 1911, the district attorney of Guayama filed an information against Luis Abella Blanco, Pastor Díaz, Pedro G. Goico and José C. Ramos charging them with the crime of

conspiracy, which information, in five distinct counts, established substantially the following facts:

" 'That on or about December 28, 1909, and December 2, 1910, two actions for damages were brought in the District Court of Guayama by Josefa Rivera against Pastor Díaz, one for breach of promise of marriage and the other for seduction, José C. Ramos being the attorney for Pastor Díaz and Luis Abella the attorney for Josefa Rivera in the two suits; that on January 26, 1911, defendants Pastor Díaz, Luis Abella, José C. Ramos and Pedro G. Goico, unlawfully, corruptly, fraudulently and criminally conspired, agreed and combined to induce plaintiff Josefa Rivera to sign motions to take a nonsuit in each of said actions and to present them to the court for the purpose of causing it to believe and understand that the suits had been compromised and that Josefa Rivera was willing to abandon them; that on the same day, January 26, 1911, said defendants Pastor Díaz, Luis Abella, José C. Ramos and Pedro G. Goico unlawfully and criminally conspired and agreed in the town of Guayama to induce Josefa Rivera to sign a notarial act before defendant Luis Abella, acting as a .notary public, in co-operation with one Ramón Jiménez, a coachman and resident of Ponce, who neither knew Josefa Rivera, nor had ever seen her before, nor had ever known her carnally, he agreeing to come from Ponce for a remuneration paid or to be paid by said Pastor Díaz and the other defendants being aware of the fact, for the purpose of having the said Josefa Rivera and Ramón Jiménez sign the said notarial act, in which Jiménez acknowledged that he was the father of a child named Ramón Rivera, son of plaintiff Josefa Rivera and Pastor Díaz; that all of the defendants unlawfully conspired and agreed by means of false and fraudulent misrepresentations and prevailed upon Josefa Rivera to sign the said notarial act, making her believe that its execution would not prejudice her rights nor those of her child Ramón, but that the said instrument contained an acknowledgment by Pastor Díaz that he was the father of the said child of Josefa Rivera when, as a matter of fact, the said notarial act did prejudice her rights and those of her child, because it did not contain such .acknowledgment of paternity by Pastor Díaz as to the child of Josefa Rivera, but was a false acknowledgment by Ramón Jiménez that he was the father of the said child; that the said defendants conspired, connived and agreed to defraud the minor Ramón Rivera and deprive him forever of his cause of action and right to bring such action, either *pro se* or through his mother, guardian,

or legal representative, against his father, the said Pastor Díaz, to establish his civil status and condition as the acknowledged natural child of Pastor Díaz; that said defendants Luis Abella, José C. Ramos, Pedro G. Goico and Pastor Díaz unlawfully, fraudulently and criminally combined and agreed to obtain and secure perpetual immunity for the said Pastor Díaz from his liability to Josefa Rivera and her child Ramón Rivera in any suit for damages which they, or either of them, might bring, or a claim against his property by his acknowledged natural child, Ramón Rivera, procuring such immunity by means of false, fraudulent and malicious statements by drafting and causing to be signed the said two motions for nonsuits and the notarial act.'

"IV. The case having been duly tried, the District Court of Guayama rendered judgment on the said information convicting all of the said defendants, except José C. Ramos, of the crime of conspiracy and sentenced them each to one year in jail at hard labor together with a fine of $1,000 and the costs.

"V. An appeal from the said judgment to this court was dismissed and the judgment appealed from affirmed on May 27, 1915.

"VI. Abella Blanco took a writ of error to the judgment of this court in the Supreme Court of the United States and on March 12, 1917, that court dismissed the same for want of jurisdiction. On June 19, 1917, this court ordered that its judgment and opinion be communicated to the lower court for the enforcement of the judgment."

Having been duly notified, on July 9, 1917, the respondent filed a demurrer pleading that the petition did not contain any allegation which could justify the revocation of his license as a notary public of Porto Rico, and later, at the hearing on July 12, 1917, filed a so-called "motion as to jurisdiction" praying the court to hold that it was without jurisdiction to decide the question of revoking his license as a notary. He also made an oral motion at the hearing to strike out the third paragraph of the petition. The court ruled that the proceeding should continue inasmuch as its jurisdiction in cases of disbarment is expressly conferred by law, reserving its decision until the proper time as to whether the defendant should be disbarred as an attorney and his license as a notary revoked.

The facts alleged in the petition are fully established by the evidence. .The respondent is at present serving his sentence in the district jail of Guayama for the crime of conspiracy to which the petition refers.

The pertinent part of section 9 of the act applicable to the case (Comp. 1911, sec. 172) reads as follows:

"An attorney or counsellor who is guilty of any deceit, malpractice, felony or misdemeanor, in connection with the practice of his profession or who is guilty of any crime involving moral turpitude, may be suspended or removed from office by the Supreme Court of Porto Rico  *  *  *."

Aside from the question of whether the misdemeanor of conspiracy committed by the respondent involves moral turpitude, we are of the opinion that it is clear that it was committed in connection with his profession as attorney and that therefore the defendant should be disbarred from the practice of that profession.

An attempt has been made to show that the respondent was convicted exclusively in consequence of his acts as a notary and that as he practiced that profession by virtue of an independent license, the proceeding brought against him has no relation to his practice of law. This is not exact. The entire proceeding demonstrates the fact that it was distinctly the respondent's capacity as an attorney which led him to take part in the conspiracy. His position as a notary permitted him to consummate the act by legalizing an essential public instrument. We quote from an opinion of this court by Mr. Justice Aldrey, delivered as grounds for affirming the judgment of the District Court of Guayama by virtue of which the respondent was convicted:

"The information substantially charged the appellants (one of whom was this respondent) with having conspired and plotted to induce Josefa Rivera to sign two motions for leave to withdraw two damage suits, one for breach of promise of marriage and the other for seduction, which she had brought against Pastor Díaz in the District Court of Guayama, in order to present the said motions

to the court and cause it to believe that the suits had been compromised and that the plaintiff was willing to abandon them; that the motions were signed and presented to the court, her signatures thereto having been obtained by taking advantage of her youth and ignorance (for she could not read although she knew how to sign her name) by fraudulently misrepresenting to her that a document which they prevailed upon her to sign was an acknowledgment by Pastor Díaz that he was the father of the child of Josefa Rivera, whereas, in fact, the said Josefa Rivera was made to acknowledge in the said document that Ramón Jiménez was the father of the said child although she had never sustained relations of any kind with Jiménez. The object of the document was not only to pervert public justice with the said motions, but also forever to deprive the child of Josefa Rivera of its right of action to establish its civil status and condition as the natural child of Pastor Díaz and to obtain immunity for all time of the property of Díaz from any claims which Josefa Rivera and her son Ramón might set up against it." *People v. Díaz et al.,* 22 P. R. R. 177.

There is no doubt then that the respondent should be disbarred from the practice of his profession as attorney. The doubt arises with regard to revoking his license as a notary.

On January 31, 1901, the Legislative Assembly of Porto Rico passed an act relative to notarial practice, in which it was provided that lawyers, citizens of Porto Rico, in the exercise of their profession before the insular courts, may act as notaries after having given bond as provided by law for "present notaries." These present notaries were those who had obtained the necessary licenses to practice during the former sovereignty and had continued in the active practice of their profession. On February 10, 1902, the Assembly passed another act modifying the previous one and ratifying the provision that attorneys might act as notaries, providing also that the Supreme Court of Porto Rico should prescribe and publish before July 1, 1902, regulations whereby candidates might obtain notarial licenses after passing an examination before the said court. Rev. Stat., secs. 681, 690.

The general law in force governing the matter is the act

of 1906 with some modifications (Comp. of 1911, p. 382), section 2 of which provides that—

"In addition to those now practicing the notarial profession in Porto Rico, and such as have heretofore secured a certificate issued by the Supreme Court of Porto Rico, only lawyers admitted to practice * * * shall hereafter be allowed to practice said profession."

In other words, at present licenses to practice the notarial profession in Porto Rico proceed from three sources: (1) Laws of the former sovereignty; (2) examination according to the act of 1902; (3) license as attorney-at-law. The first two sources will disappear with the persons who at present enjoy the privilege obtained by virtue thereof. The third reveals the final course of the legislature, viz: that in order to be a notary it is necessary to have a diploma as attorney-at-law.

In this case the respondent can practice the notarial profession either by virtue of his diploma as attorney-at-law or by virtue of his license as notary obtained under the act of 1902.

That a person who is disbarred as an attorney is *ipso facto* removed from his office as notary, which he held by virtue of his license to practice law, is a question which has been decided in the affirmative by this court in the cases of *In re Figueroa Maestre,* 20 P. R. R. 436, and *In re Torregrosa, ante,* p. 593.

The question of whether in disbarring an attorney in a special proceeding brought under the provisions of the act "Providing for the organization of a committee of attorneys-at-law to examine and report upon the moral qualifications of applicants for admission to practice law before the courts of the Island of Porto Rico, defining certain duties of attorneys and counsellors-at-law, and for other purposes," approved March 11, 1909, his license as notary can be revoked also when he has an independent license to practice the notarial profession obtained by examination in accordance

with the act of 1902, now comes before this court for the first time.

The said act of 1900 refers exclusively to attorneys. The proceeding which it prescribes is only to disbar attorneys from the practice of their profession and this being the case, it does not seem to us to be the proper proceeding in which to deprive the respondent of the privilege that he obtained by virtue of the act of 1902. For that reason we are of the opinion that our action in the present case should be limited to disbarring the respondent as an attorney-at-law without taking any action regarding the right which the said respondent may have to practice as a notary public, based on the license which he obtained in accordance with the act of 1902.

Therefore this court orders that the respondent, Luis Abella Blanco, be disbarred as an attorney-at-law, with the other pronouncements of law, but holds that in this proceeding it can not revoke his license as a notary public, acquired by examination according to the Act of February 10, 1902, governing that matter.

> *Respondent disbarred as attorney but not as notary.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.